ZEHMER, Chief Judge
(dissenting).
This appeal questions the award of approximately ten weeks of temporary total disability benefits. At the end of that period claimant had returned to work with the employer. As I understand the evidence and the findings of the Judge of Compensation Claims, during this period there was some confusion by claimant as to whether she had been released by Dr. MacMillan to return to work and for that reason she did not immediately accept the employer’s offer of work. The judge resolved this factual dispute in favor of the claimant based on her testimony and other evidence.[1] Even if I, as an appellate judge, might disagree with the judge’s findings, nevertheless they fall within the permissible range of facts that may be found on *240 this record, and that should end this matter. I read nothing in the majority opinion that demonstrates the judge applied the wrong legal standard or erred as a matter of law in reaching the decision under review. Therefore, I would simply affirm without opinion.

. The order recites in pertinent part:
Even if I were to accept Dr. Magana's opinion that the claimant was capable of sedentary work within the above-stated restrictions, this claimant must still be awarded temporary total disability benefits from 07/04/94 through 09/11/94. Mrs. Jones testified that none of her physicians ever told her to return to work. She specifically testified that during the period ¡ from June through August, 1994, she did not feel that she was able to work.
After Mrs. Jones' evaluation by D.r. Magana, she returned to her authorized treáting physician, Dr. David MacMillan, a neurosurgeon, on 05/05/94. Dr. MacMillan performed an anterior cervical diskectomy and fusion at C5-6 on 09/29/93. Dr. MacMillan testified that as of 05/05/94, he did not feel that Mrs. Jones should be working and he did not release hér to return to work when he next saw her in January, 1995. Dr. MacMillan did not tell the claimant that she was released to return to work on 0.5/05/94. In fact, on 06/10/94 he issued the claimant a disability slip, which stated that the claimant had been totally incapacitated since 04/21/93 and would remain so until an unknown time.
The servicing agent apparently forwarded a copy of Dr. Magana’s 03/29/94 report to Dr. MacMillan, who then arrived at the conclusion that Dr. Magana was correct with regard to the claimant’s work status and restrictions. However, Dr. MacMillan specifically testified that he did not inform the claimant that she was released to any form of employment even as of 01/06/95. Dr. Magana testified that-he had no specific recollection of discussing work status with the claimant. Dr. Magana confirmed that if he had discussed work restrictions with the claimant, he would have put a copy’ of the restrictions in the chart, but that this was not done in Mrs. Jones’ case.
Dr. James Autin, an ear, nose and throat specialist, treated the claimant for a persistent and unrelenting cough and hoarseness, which I find, in accordance with the testimony of Dr. Autin, Dr. MacMillan and Dr. Magana, to be related to the claimant's cervical spine surgery within a reasonable degree of medical certainty. Dr. Au-tin diagnosed a weakness of the vocal cord that is a common risk of cervical spine surgery. He prescribed speech therapy and recommended that the claimant obtain a second opinion from Dr. Cassisi, of Shands Medical Center in Gaines-ville, Florida. Following this evaluation, Dr. Au-tin concluded that the claimant also exhibited, in addition to the organic injury, a psychogenic basis for the claimant’s persistent and unrelenting cough. Dr. Autin testified that the claimant was not at a point of maximum medical improvement with regard to her vocal cord weakness as of the last time he saw her on 08/03/94. Dr. Autin’s deposition is dated 08/16/94, prior to the claimant’s next expected visit with Dr. Autin, 2 months following her last visit of 08/03/94. There is no evidence before me that the claimant reached maximum medical improvement from her vocal cord condition. The claimant testified that she still suffers the symptoms of this condition, although Dr. Autin testified that the claimant's condition continued to improve from his 03/31/94 visit until he last saw her. Mrs. Jones testified that she tends to cough if she talks or laughs for more than a short period of time. The cough is persistent enough to interrupt conversation and interferes with her sleep. Additionally, with the coughing, her voice becomes quite horse [sic] and she finds it difficult to speak.
Mrs. Jones specifically testified that she did not feel that she was capable of work during the period of time in issue, namely, 07/04/94 through 09/11/94, and it is clear to the undersigned that none of the physicians who examined or treated the claimant informed her of their opinions that she was capable of returning to sedentary work, *240 as defined by the Dictionary of Occupational Tides and as further delineated by Dr. Magana in his testimony. The claimant testified that she did not know that she had been released to return to work by any of her physicians, and I accept her testimony in this regard. The next issue, having accepted that the claimant did not know that she was released to return to sedentary employment, is whether Mrs. Jones should have known that she was released to return to work, ostensibly based on the letters from the employer dated 06/13/94 and 07/18/94.
The 06/13/94 letter from Don VanTil, Human Resources representative, and a witness who testified before me, followed by only 3 days the issuance of a total disability slip by Dr. MacMil-lan (the disability slip was dated 06/10/94). Although the claimant received this letter, she knew that she had just received a disability slip from her treating neurosurgeon 3 days prior to the letter. The 06/13/94 letter from Mr. VanTil indicates that, "according to your doctor, you are now able to return to work.” The letter does not reference which doctor, the date, of release to return to work, or the restrictions or conditions under which the claimant could work. By a letter dated 07/18/94, Mr. VanTil reiterated, in that letter, that the claimant should contact her employer with regard to a job opening. Further, this letter informed the claimant that if she failed to contact either the store manager or himself before 07/29/94, the claimant would be deemed to have voluntarily resigned her position with the employer.
I am also aware of the Notices of Denial which were filed by the servicing agent in response to her request for wage loss benefits. The first such Notice of Denial is dated 07/19/94 and states:
“Per both Dr. MacMillan and Dr. Magana, the claimant reached maximum medical improvement on 05/23/94. The claimant was offered a position within the restrictions given by Dr. Magana, but has voluntarily refused to accept this employment.”
The claimant had not returned to Dr. Magana since her 03/29/94 visit and she had not seen Dr. MacMillan since 05/05/94. The claimant received a disability slip from Dr. MacMillan, on which she relied and further, which was consistent of her own opinion that she could not work. Considering the claimant’s testimony, her physical injuries and her age, educational background and work history, I am not persuaded that the claimant should have known she was released to return to work. The claimant should not be held to a requirement of guessing which physician may have released her to return to work, when this release may have occurred, or the conditions under which the release was given. This is especially true in this case, where the claimant had several conditions which are causally related to the industrial accident and she has been treated by several physicians for these conditions. To place the burden on the claimant of investigating the release to return to work, would place an unfair burden on the injured worker in this employer/servicing agent monitored system. After 07/30/94, the claimant believed she had been terminated from her employment with the employer. Thereafter, the claimant began a search for employment and contacted her employer. She began working for the employer and sustained a substantial wage loss. The claimant was given part-time employment by the employer within the restrictions imposed by Dr. Magana. However, the claimant testified at hearing that she has difficulty performing even this part-time sedentary work.
4. Because the claimant did not know that she was released to return to work and because it cannot be held that the claimant should have known that she was released to return to work, I must find that the claimant did not voluntarily limit her income when rejecting offered employment with the employer herein until 09/12/94. I am awarding temporary total disability benefits from 07/04/94 through 09/11/94, together with statutory interest thereon from the time these benefits were due until actually paid.